UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robert White,

        Plaintiff,

        v.

Core Civic Corporation et al.,

        Defendants.

Civil Action No. 2:20–cv–211–cr–kjd

**REPORT AND RECOMMENDATION**
(Docs. 3, 8, 39)

Pro se plaintiff Robert White, a Vermont inmate currently incarcerated at Tallahatchie

County Correctional Facility in Tutwiler, Mississippi (TCCF), brings this action alleging that

Defendants violated his rights under federal and state law by denying him access to a kosher diet.

He names as Defendants Core Civic Corporation,[1] former TCCF Warden Raphael Vergara,

TCCF Chaplain Dennis J. Hawkins, Sr., former Vermont Department of Corrections (Vermont

DOC) Commissioner James Baker,[2] and Vermont DOC Administrator David Turner.  (Doc. 7.)

White alleges that the denial of his requested kosher diet violated his rights under the

Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983; the free exercise

---

[1] CoreCivic refers to itself as "CoreCivic, Inc."  The Court takes judicial notice that the proper name of the defendant is "CoreCivic, Inc.," as that is the registered name of the company according to the Office of the Secretary of State in the State of Maryland, CoreCivic, Inc.'s place of incorporation.  *See* Fed. R. Evid. 201(b)(2).

[2] Since the filing of White's Complaint, Nicholas Deml has succeeded James Baker as DOC Commissioner, and R. Byrd has replaced Vergara as Warden at TCCF.  To the extent that White's Complaint names former interim Commissioner Baker in his official capacity, Commissioner Deml is automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d).  Similarly, Byrd is automatically substituted as Warden of TCCF with respect to official-capacity claims that White brings against Vergara.  *See id.*

clause in Chapter I, Article 3 of the Vermont Constitution; the "Common Benefits Clause" in Chapter I, Article 7 of the Vermont Constitution; the right to free exercise of religion for Vermont inmates under 28 V.S.A. § 803; and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc–1.  (Doc. 7 at 1.)  White brings these claims against Defendants CoreCivic, Inc. (CoreCivic), Hawkins, Vergara, Byrd, Deml, Baker, and Turner in their individual and official capacities (*id.*), seeking compensatory damages, punitive damages, and an injunction preventing Defendants from "continuing to deny [White] a daily [k]osher diet," (*id.* at 6.)  White has also filed a Motion for Injunctive Relief, in which he requests an "emergency injunction" to "enjoin the Defendants from continuing to deny [his] request for a daily [k]osher diet."  (Doc. 8 at 1, 4, 5.)[3]

This Report and Recommendation addresses (i) Defendants Deml, Baker, and Turner's (the "Vermont Defendants") Motion to Dismiss or, in the alternative, Motion for Venue Transfer to the Northern District of Mississippi (Doc. 3); (ii) Defendants CoreCivic, Inc., Byrd, Vergara, and Hawkins's (the "CoreCivic Defendants") Motion to Dismiss, which alternatively requests transfer of White's claims to the Northern District of Mississippi (Doc. 39); and (iii) White's Motion for Injunctive Relief (Doc. 8).

For the reasons explained below, I recommend granting in part and denying in part the Vermont Defendants' Motion to Dismiss, or in the alternative, Motion for Venue Transfer to the Northern District of Mississippi (Doc. 3), and granting in part and denying in part CoreCivic

_____

[3] White initially filed his Motion for Injunctive Relief under Rule 65 of the Vermont Rules of Civil Procedure in Vermont Superior Court.  (*See* Doc. 1-1 at 9.)  Because Vermont Defendants removed the Complaint to federal court, Federal Rule of Civil Procedure 65 governs White's request for injunctive relief.  *See Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004) (applying federal rules to motion challenging temporary restraining order because "federal law is applied as though the action was originally commenced [in federal court]").

Defendants' Motion to Dismiss (Doc. 39). I recommend transferring White's Complaint and Motion for Injunctive Relief to the Northern District of Mississippi. (Docs. 7, 8.)

## Background

### I.    Facts

The facts alleged in White's Complaint are accepted as true for purposes of recommending a disposition on Defendants' Motions to Dismiss.

At all times relevant to the Complaint, White has been "a Vermont inmate[] committed to the care and custody of the Commissioner of the [Vermont DOC]." (Doc. 7 at 2, ¶ 1.) The Vermont DOC has transferred Vermont inmates pursuant to "a series of contracts with various public and private out-of-state jails and prisons" due to "unanticipated and significant prison overcrowding." (*Id.* ¶ 2.) According to White, "[o]ne of the major contractors that provided out-of-state housing to the [Vermont DOC] was the Corrections Corporation of America."[4] (*Id.* ¶ 3.) The Vermont DOC and CoreCivic entered into an agreement in 2019 to transfer Vermont inmates to TCCF. (*Id.* at 3, ¶¶ 10, 11.) White was transferred to TCCF pursuant to this agreement. (*Id.* ¶ 11.)

Upon White's arrival at TCCF, he "was not asked to, nor did he declare[,] a religious preference." (*Id.* ¶ 12.) White "had recently converted to Judaism," and he "submitted a written request to [TCCF Chaplain] Hawkins" in which he sought "an accommodation to his new faith in the form of a daily [k]osher diet." (*Id.* ¶ 13.) Chaplain Hawkins denied his request, "responding that 'just because you adopted a new faith[,] you do not get a new diet.'" (*Id.* ¶ 14.) White claims that, "[a]t the time [White] made his request, [TCCF] routinely provided various

---

[4] According to Vermont Defendants, Defendant "CoreCivic was formerly known as Corrections Corporation of America or 'CCA.'" (Doc. 24 at 2 n.2.)

types of religious diets to numerous other inmates housed there, including many Jewish . . .
Vermont inmates." (*Id.* ¶ 16.) White then "verbally communicated his complaint about being
denied a daily [k]osher diet to various Vermont caseworkers and contract monitors who routinely
toured [TCCF]." (*Id.* ¶ 17.) Each time he did so, however, White "was informed the issue was a
[TCCF] issue, and the [Vermont DOC] could not interfere with [CoreCivic] policy." (*Id.* ¶ 18.)

Because White was "[o]btaining no local relief, [he] filed an Informal Grievance" with
the Vermont DOC on January 29, 2020, "complaining that he was being denied a daily [k]osher
diet." (*Id.* at 4, ¶ 19; Doc. 8-1 at 1, 2.)[5] "After receiving no response," White then "filed a
Formal Grievance reiterating his complaint that he was being denied a daily [k]osher diet" (Doc.
7 at 4, ¶ 20), despite "request[ing] a kosher diet, as [he] ha[d] converted to Judaism." (Doc. 8-1
at 2.) While this grievance was pending, TCCF "inexplicably began to provide [White] with
daily [k]osher meals for Passover." (Doc. 7 at 4, ¶ 21.) When Passover ended, TCCF "[e]qually
inexplicably . . . ceased serving [White] daily [k]osher meals." (*Id.* ¶ 22.)

When White received no reply to his Formal Grievance, he filed "a Decision Appeal To
Corrections Executive" with the Vermont Facilities Executive on March 12, 2020. (*Id.* ¶ 23;
Doc. 8-1 at 3, 4.)[6] Receiving no reply to this appeal, White filed a "Decision Appeal To
Commissioner" on April 14, 2020. (Doc. 7 at 4, ¶¶ 24–25; Doc. 8-1 at 4.) In his appeal to the

---

[5] White appears to have intended to attach the grievance forms and the Vermont DOC's response to his
Complaint. (*See, e.g.*, Doc. 7 at 4 (citing grievances as Exhibits 1–5).) Those forms appear instead to be attached to
White's Motion for Injunctive Relief, which incorporates by reference the facts alleged in the Complaint. (*See* Doc.
8-1.) The Court considers the grievance forms incorporated by reference in the Complaint. *See Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding that a court may consider the complaint's factual
allegations, matters subject to judicial notice, documents integral to the complaint, and documents incorporated in
the complaint by reference when reviewing a motion to dismiss); *accord DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d
104, 111 (2d Cir. 2010).

[6] The copy of this grievance form is largely illegible. (*See* Doc. 8-1 at 3.) However, when appealing his
"grievance appeal from the Corrections Executive which was dated [March 12, 2020]," White notes that he
"point[ed] out" in his "Grievance #5"—the form for the Corrections Executive Appeal—that TCCF "has no lawful
authority to deny [his] request for accommodation to [his] religious diet." (*Id.* at 4.)

Commissioner, White claimed that "[s]ince the diet is offered to other adherents of the Jewish faith, the decision to deny [his] request [wa]s made in bad faith and with discriminatory purpose." (Doc. 8-1 at 4.)

On April 21, 2020, Defendant Turner replied to White's Corrections Executive Appeal. (Doc. 7 at 4, ¶ 26; Doc. 8-1 at 5.) Turner stated:

> TCCF is not required to follow the VTDOC's directive on religious observance. You will need to adhere to the process that is in place at TCCF. Even if you were in Vermont[,] you would be able to change your religious designation only once per year. Your appeal is denied.

(Doc. 8-1 at 5; *see also* Doc. 7 at 4, ¶ 27.) White states in the Complaint that he "had not 'changed his religious designation' within the twelve months preceding his request for a religious dietary accommodation." (Doc. 7 at 4 n.3.) As of the date of filing his Complaint, White had received "no response . . . to [his] Appeal to the Commissioner." (*Id.* ¶ 28.)

## II.    Procedural History

White filed the Complaint and Motion for Injunctive Relief in Vermont Superior Court on June 8, 2020. (Doc. 1 at 1, ¶ 1; Doc. 1-1.) The Vermont Defendants removed White's action to this Court on December 15, 2020. (Doc. 1.)

### A.    Vermont Defendants

On December 22, 2020, Vermont Defendants filed a Motion to Dismiss White's Complaint. (Doc. 3.) Vermont Defendants contend that the Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); improper venue under Rule 12(b)(3); and for failure to state a claim under Rule 12(b)(6). (*Id.* at 1.) First, Vermont Defendants claim that subject matter jurisdiction is lacking because sovereign immunity prohibits White's monetary-damages claims against Defendants Deml and Turner in their official capacities. (*Id.* at 2–3.) Second, Vermont Defendants claim that White fails to state

a claim against Defendants Baker and Turner in their individual capacities because his assertions are "vague and conclusory," and he does not allege that Baker and Turner were personally involved in the underlying deprivation of his rights. (*Id.* at 3–8.) Vermont Defendants also assert that the District of Vermont is not the proper venue for White's claims given that "the principal allegations of misconduct center on the correctional facility in Tallahatchie[,] Mississippi." (*Id.* at 8.) Alternatively, Vermont Defendants request that White's Complaint be transferred to the Northern District of Mississippi where TCCF is located. (*Id.* at 8–9.)

In response to White's Motion for Injunctive Relief, Vermont Defendants contend that White's request for a kosher diet is moot. (Doc. 20 at 1.) They note that White submitted a "Request for Religious Diet Form" requesting a kosher diet on June 10, 2020; that they granted his diet request the same day; and that he has been receiving a kosher diet since that time. (*Id.* at 2.) The Vermont Defendants submit the affidavit of Karl Taylor, the TCCF Chaplain at the relevant time, to establish these facts. (Doc. 20-1 at 1, 2, ¶¶ 3, 8–9, 12.)

White replies that these facts in Chaplain Taylor's affidavit are "demonstrably false" or "intentionally misleading." (Doc. 23 at 2.) White states in an affidavit that, before January 2020, he "submitted numerous Request For Change of Religious Designation Forms" and "Request For Religious Diet Forms to TCCF staff," but he received no response. (Doc. 23-1 at 1, ¶¶ 3–5.) He then submitted his "informal grievance form to TCCF staff" on January 29, 2020. (*Id.* ¶ 6.) White acknowledges that "[o]n June 10, 2020, Chaplain Hawkins appeared in [his] living unit and presented [him] with a form he insisted [White] sign in order to begin receiving [his] kosher diet." (*Id.* at 2, ¶ 12.) White claims that he "had not 'submitted' said form, but was instead[ ] informed by Chaplain Hawkins [that] [he] was required to sign it." (*Id.* ¶ 13.) Thus, "[e]xcept for the original requests for [a] change in religious designation form, and

6

the numerous requests for a kosher diet form[ ] referred to in [his] original grievances and appeals, [White] ha[s] never 'submitted' any other form with respect to [his] religion." (*Id.* ¶ 14.)  White attests that "[t]o date, [he] ha[s] never received a 'kosher' diet." (*Id.* ¶ 15.)

### B.    CoreCivic Defendants

On January 18, 2022, the CoreCivic Defendants filed their Motion to Dismiss, seeking dismissal based on lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  (Doc. 39 at 6.)  Alternatively, CoreCivic Defendants join Vermont Defendants' request to transfer White's Complaint to the Northern District of Mississippi.[7]  (*Id.* at 6, 9.)

To establish the lack of personal jurisdiction, CoreCivic Defendants submit affidavits from Byrd, Hawkins, and Vergara, each attesting as follows:

1. I do not live in Vermont[,] nor have I ever lived in Vermont.
2. I do not own property in Vermont.
3. I do not hold a job in Vermont.[8]
4. I have not been sued in Vermont to my knowledge.
5. I have not traveled to the state of Vermont.
6. I was not involved in the formation, negotiation, or the signing of the contract between CoreCivic and Vermont DOC to incarcerate Vermont inmates at TCCF in Mississippi.

(Doc. 39-1 at 1–2, ¶¶ 7–12; Doc. 39-2 at 2, ¶¶ 7–12; Doc. 39-3 at 1–2, ¶¶ 7–12.)

Byrd attests that he has been the Warden at TCCF since June 2021 and previously "served as Warden at the Trousdale Turner Correctional Center in Hartsville, Tennessee from April 2020 to June 2021." (Doc. 39-1 at 1, ¶ 3.)  He has been employed by CoreCivic since

---

[7] CoreCivic Defendants join Vermont Defendants' request to transfer White's Complaint to the "District of Mississippi." (Doc. 39 at 1, 6, 9.)  Because Vermont Defendants request the transfer of White's Complaint to the Northern District of Mississippi, the Court reads the CoreCivic Defendants' Motion to also request a transfer to the Northern District of Mississippi.

[8] Vergara also states in his affidavit that he does not hold a job in Vermont, "nor ha[s] [he] ever." (Doc. 39-3 at 2, ¶ 9.)

1999, except from June 2014 to April 2015 when he worked for the Mississippi Department of Corrections. (*Id.* ¶ 4.) Byrd has lived in Texas for 59 years, and he travels to Mississippi for work. (*Id.* ¶ 6.) Hawkins attests that he is also "currently employed by CoreCivic," "[is] the Chaplain at [TCCF] in Tutwiler, Mississippi," and "held this position from 2016 until he retired in 2020." (Doc. 39-2 at 1, ¶ 3.) However, he "returned to this position in July 2021 part [] time until the position can be filled with a full-time Chaplain." (*Id.*) He "ha[s] lived and worked in Mississippi all of [his] life." (*Id.* at 3, ¶ 5.) Vergara attests that he was the TCCF Warden "from December 2019 to September 2020," but he "had been employed by CoreCivic since 2014." (Doc. 39-3 at 1, ¶¶ 3, 4.) He has resided in Florida since 2016. (*Id.* ¶ 6.)

## Discussion

### I.    Motions to Dismiss

As discussed below, White's claims for damages against Defendants Deml and Turner in their official capacities are barred by sovereign immunity and should be dismissed based on lack of subject matter jurisdiction. Subject matter jurisdiction is also lacking over White's claim for injunctive relief against Deml and Turner in their official capacities because White does not have standing to bring this claim. Additionally, White has not shown that the Court may exercise personal jurisdiction over CoreCivic Defendants. Finally, the District of Vermont is not a proper venue for any of the remaining claims against Defendants Baker and Turner in their individual capacities or against CoreCivic Defendants. Therefore, White's claims against Defendants Baker and Turner in their individual capacities and against CoreCivic Defendants should be transferred in the interest of justice to the Northern District of Mississippi.

### A. The Court lacks subject matter jurisdiction over White's claims against Defendants Deml and Turner in their official capacities.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject[ ]matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).[9] "A motion questioning the Court's subject matter jurisdiction must be considered before other challenges since the Court must have jurisdiction before it can properly determine the merits of a claim." *Przespo v. U.S. Post Off.*, 177 F. Supp. 3d 793, 795 (W.D.N.Y. 2016); *see also Levitt v. State of Md. Deposit Ins. Fund Corp.*, 643 F. Supp. 1485, 1489 n.3 (E.D.N.Y. 1986) ("Federal courts must . . . find the existence of subject[ ]matter jurisdiction before they may entertain a motion to transfer."); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III standing, . . . [s]uch a dismissal is one for lack of subject matter jurisdiction.").

### 1. Sovereign immunity bars White's claims for damages against Defendants Deml and Turner in their official capacities.

"[B]ecause sovereign immunity is 'jurisdictional in nature,' questions of sovereign immunity implicate a court's subject matter jurisdiction and are analyzed under Rule 12(b)(1)." *Arjent LLC v. U.S. SEC*, 7 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) (citing *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)).

The Eleventh Amendment generally prohibits plaintiffs from recovering damages from state defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that claim for damages against state officials in their official capacity is considered to

---

[9] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

be a claim against the state and is thus barred by the Eleventh Amendment); *Pennhurst State Sch.*
*& Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (noting agencies and departments of the state
are entitled to assert the state's Eleventh Amendment immunity); *Darcy v. Lippman*, 356 F.
App'x 434, 436–37 (2d Cir. 2009) ("The Eleventh Amendment . . . bars [plaintiff] from pursuing
a claim for damages against the individual defendants in their official capacities.").  Exceptions
to this general rule apply when there has been an explicit and unequivocal waiver of immunity
by a state, or a similarly clear abrogation of immunity by Congress.  *See Graham*, 473 U.S. at
169; *Pennhurst*, 465 U.S. at 99.

The State of Vermont has not waived its Eleventh Amendment sovereign immunity.  The
Vermont Legislature has explicitly preserved the State's Eleventh Amendment immunity.  *See*
12 V.S.A. § 5601(g) (stating that Vermont Tort Claims Act reserves Eleventh Amendment
immunity for all claims not specifically waived).  It is well established that Congress did not
abrogate state sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332,
340–42 (1979).  Therefore, I recommend that the Court dismiss White's state and federal claims
for damages against Defendants Deml and Turner in their official capacities.

> **2.    White lacks standing to bring claims for injunctive relief against
> Defendants Deml and Turner in their official capacities because he
> does not allege that the denial of the requested kosher diet is based on
> an official policy or its equivalent.**

White requests that the Court "[e]njoin the Defendants from continuing to deny Plaintiff
a daily Kosher diet." (Doc. 7 at 6.)  Although Vermont Defendants do not address whether White
has standing to pursue injunctive relief from Deml and Turner in their official capacities, the
Court considers the issue because standing is an essential element of subject matter jurisdiction.
*See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*
*L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to th[e] Court's

subject matter jurisdiction, it can be raised *sua sponte*."); *Tobin v. Touchette*, Civil Action No. 2:19-cv-213-cr-jmc, 2020 WL 6828013, at *3 (D. Vt. July 15, 2020), *report and recommendation adopted sub nom. Tobin v. Baker*, Case No. 2:19-cv-213, 2020 WL 4932279 (D. Vt. Aug. 21, 2020).

"[S]tanding is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Although actions for damages against defendants in their official capacities must be dismissed on sovereign immunity grounds, *see Brandon v. Holt*, 469 U.S. 464, 471 (1985), an official-capacity claim for injunctive relief to prevent a continuing violation of federal law may proceed if the plaintiff has standing to pursue such relief, *see Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155–56, 159 (1908)). To meet the constitutional minimum of standing to seek injunctive relief, White must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). This requires a showing of "*both* [1] a likelihood of future harm *and* [2] the existence of an official policy or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). Claims for injunctive relief under RLUIPA must satisfy the same standing requirement. *Wells v. McKoy*, 1:16-CV-00113 EAW, 2018 WL

11

6833665, at *4 (W.D.N.Y. Dec. 27, 2018) ("RLUIPA's statutory provisions reflect this Article III standing requirement.").

A plaintiff can allege the existence of an official policy or its equivalent by pointing to a "policy or custom (or an equivalent) suggesting that any defendant regularly violates [plaintiff's and similarly situated individuals'] . . . rights." *Peck v. Baldwinsville Cent. Sch. Dist.*, 351 F. App'x 477, 479 (2d Cir. 2009). Although the Second Circuit has not had occasion to explain what constitutes the "equivalent" of an official policy, "[d]istrict courts in this Circuit have generally construed the existence of an official policy or its equivalent as coextensive with the 'policy' or 'custom' requirement of municipal liability under 42 U.S.C. § 1983." *D.H. v. City of New York*, 309 F. Supp. 3d 52, 67 (S.D.N.Y. 2018) (citing *An v. City of New York*, No. 16 Civ. 5381 (LGS), 2017 WL 2376576, at *3 (S.D.N.Y. June 1, 2017) (collecting cases)).

In this case, White alleges the likelihood of future harm, but he has not alleged the existence of a policy or its equivalent causing the denial of a kosher diet. To the contrary, White specifically alleges that "[a]t the time [he] made his request, [TCCF] routinely provided various types of religious diets to numerous other inmates housed there, including many Jewish . . . Vermont inmates." (Doc. 7 at 3, ¶ 16.); *see also Smith v. Touchette*, Civil Action No. 2:19-cv-208-cr-jmc, 2020 WL 5822173, at *4 (D. Vt. Aug. 10, 2020) (in lawsuit alleging that DOC violated plaintiff's constitutional rights by instructing him to prepare food in manner that did not comply with Halal requirements, finding that plaintiff had no standing for injunctive relief where plaintiff did not allege existence of a DOC policy requiring food preparation that was inconsistent with Halal requirements), *report and recommendation adopted sub nom. Smith v. Baker*, Case No. 2:19-cv-208, 2020 WL 5821166 (D. Vt. Sept. 30, 2020). White alleges only that Chaplain Hawkins denied his requested diet, and the Vermont DOC has not remedied that

12

denial.  (*See* Doc. 8 at 4 ("Plaintiff submits that the indisputable evidence establishes that the only reason Plaintiff's request for a daily [k]osher diet was denied was because of an arbitrary, ill-informed, and unrestrained and unlawful decision of Defendant Vergara's subordinate, Chaplin Hawkins.").)  This apparently isolated occurrence does not suggest the existence of a state policy endorsing unconstitutional practices. *Cf. Williams v. Annucci*, 895 F.3d 180, 185 (2d Cir. 2018) (challenging DOC's refusal to accommodate a kosher meal request "in accordance with the DOC's policy regarding religious diets," under which DOC denied requests to "transfer[] [plaintiff] to a facility that serves full kosher meals, provid[e] him with a kosher vegetarian meal . . . , replac[e] the items he cannot eat with other items . . . , or remov[e] the items he cannot eat from his tray").[10]

White also alleges that by not providing him a kosher diet, Defendants Deml and Turner have failed to ensure that TCCF follows Vermont state law on religious freedom.  (Doc. 7 at 5; Doc. 8 at 2–3.)  However, this allegation also does not establish standing under § 1983 for the requested injunctive relief because § 1983 is not a means for the enforcement of state law. *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("Clearly, a violation of state law is not cognizable under § 1983."); *Talley v. McKinney*, No. 20-1118-JDT-cgc, 2021 WL 1254681, at \*3 (W.D. Tenn. Apr. 5, 2021) ("Even if the policies in question ultimately are mandated by the [Tennessee ]DOC as well as by CoreCivic, § 1983 does not provide a remedy for violations of state laws or regulations.").  White has articulated no "policy or custom (or an equivalent)" under

---

[10] Turner's reply to White's grievance refers to a Vermont DOC policy under which White "would be able to change [his] religious designation only once per year."  (Doc. 8-1 at 5); *Mitchell v. Annucci*, No. 9:19-CV-0718 (MAD/ML), 2019 WL 3253192, at \*3 (N.D.N.Y. July 19, 2019) (reviewing inmate's challenge to policy where "prisoners are only permitted to change their religion at twelve-month intervals").  However, White does not appear to challenge that policy.  Rather, he specifically asserts that he "had not 'changed his religious designation' within the twelve months preceding his request for a religious dietary accommodation."  (Doc. 7 at 4 n.3.)

which either Deml or Turner "regularly violates" TCCF inmates' rights.  *See Peck*, 351 F. App'x at 479.  Accordingly, he lacks Article III standing to pursue injunctive relief from Deml and Turner in their official capacities.

I therefore recommend that the Court dismiss White's claims for injunctive relief against Defendants Deml and Turner in their official capacities.[11]

### B.    The Court lacks personal jurisdiction over CoreCivic Defendants.

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."  *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  The same principle that requires courts to first resolve questions of subject matter jurisdiction "applie[s] equally to personal jurisdiction, because 'personal jurisdiction, too, is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication.'"  *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989–90 (2d Cir. 2006) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  However, "the plaintiff need make only a prima facie showing that jurisdiction exists . . . ."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

---

[11]  White's state-law claims requesting injunctive relief from Defendants Deml and Turner in their official capacities should also be dismissed for lack of subject matter jurisdiction.  *See Chinn v. City Univ. of N.Y. Sch. of Law at Queens Coll.*, 963 F. Supp. 218, 227 (E.D.N.Y. 1997) ("Whereas a federal court may award injunctive relief against a state official in an official-capacity action based on the *Ex Parte Young* 'exception,' the Eleventh Amendment bars even prospective injunctive relief based on violations of state law." (citing *Pennhurst*, 465 U.S. at 106)); *see also Dube v. State Univ. of N.Y.*, 900 F.2d 587, 595 (2d Cir. 1990) ("[A] federal court's grant of injunctive relief against a state official may *not* be based on violations of state law.").

The Court may consider evidence outside the Complaint to determine whether it may exercise personal jurisdiction over the defendants.  *See Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019).  However, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  Nevertheless, the court will not draw "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  *Id.*  Accordingly, "[c]onclusory non-fact-specific jurisdictional allegations or legal conclusions couched as . . . factual allegation[s] will not establish a prima facie showing of jurisdiction."  *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018).

To exercise personal jurisdiction over a defendant, the Court must find the following: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles."  *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 197 (S.D.N.Y. 2018) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)).  In general, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located."  *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).

Under Vermont's long-arm statute, a court may exercise personal jurisdiction over a nonresident defendant "to the full extent permitted by the . . . Due Process Clause" of the

Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (citing 12 V.S.A. § 913(b)). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 154 Vt. 36, 41, 572 A.2d 1382, 1386 (1990).

Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "The constitutional minimum contacts inquiry for personal jurisdiction requires [the Court] to distinguish between two forms of jurisdiction," general and specific. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008).

### 1.    The Court does not have general jurisdiction over CoreCivic Defendants.

A court asserting "general jurisdiction" over a defendant is permitted to "hear any and all claims against" that defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction is authorized where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in an

16

"exceptional case" will an individual's contacts with a forum "be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, but the Second Circuit has yet to find such a case." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). Similarly, when determining whether general jurisdiction exists over a corporation, "[a]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018).

The Court does not have general jurisdiction over Defendants Byrd, Vergara, or Hawkins. None of these Defendants are domiciled or otherwise "at home" in Vermont. (Doc. 39 at 4.) The Complaint is devoid of allegations that Byrd, Vergara, or Hawkins have ever had any contact with the state of Vermont. In addition, the affidavits of these individuals confirm that they have had no contact with Vermont. (*See* Doc. 39-1 at 1–2, ¶¶ 7–12; Doc. 39-2 at 2, ¶¶ 7–12; Doc. 39-3 at 1–2, ¶¶ 7–12.) They are therefore not subject to general jurisdiction in Vermont.

CoreCivic is also not subject to general jurisdiction in Vermont. First, it is undisputed that CoreCivic is not incorporated in Vermont and does not have its principal place of business in Vermont.[12] Therefore, the Court may only exercise general jurisdiction over CoreCivic if this is an "exceptional" case. *See SPV Osus Ltd.*, 882 F.3d at 343. While CoreCivic arguably has more contacts with Vermont than Byrd, Vergara, or Hawkins, this does not present the "truly exceptional case" in which CoreCivic would otherwise be "at home" in Vermont and therefore subject to general jurisdiction. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir.

---

[12] CoreCivic represents that it is a private corporation "located in Tennessee and incorporated in Mississippi." CoreCivic includes a hyperlink to the website of the Tennessee Secretary of State to substantiate these jurisdictional facts. (Doc. 39 at 4 & n.2.) According to the website, CoreCivic was formed in Maryland and is principally located in Tennessee. The Court takes judicial notice of these facts. *See* Fed. R. Evid. 201(b)(2).

2016) ("[M]ere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"). Accordingly, I recommend that the Court decline to exercise general jurisdiction over CoreCivic Defendants.

### 2.    White has not shown that the Court may exercise specific jurisdiction over CoreCivic Defendants.

Specific jurisdiction over a nonresident defendant exists "when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F.3d at 624. The minimum-contacts inquiry for specific jurisdiction is satisfied if (1) "the defendant has 'purposefully directed' his activities at residents of the forum" or "purposefully availed itself of the privilege of doing business in the forum," and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150, 151 (2d Cir. 2019). To meet the minimum-contacts requirement, "the defendant's suit-related conduct must create a substantial connection with the forum State," not simply with persons who reside there. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see id.* at 283–84 ("The inquiry . . . focuses on the relationship among the defendant, the forum, and the litigation."). As such, "mere injury to a forum resident" is insufficient. *Id.* at 278. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017).

Examples of requisite, deliberate contacts include "'exploiting a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden*, 571 U.S. at 285). However, "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot." *Burger King Corp. v.*

18

*Rudzewicz*, 471 U.S. 462, 478 (1985); *see also RLB & Assocs., Ltd. v. Aspen Med. Pty.*, Case No. 2:15-cv-123, 2016 WL 344925, at *5–6 (D. Vt. Jan. 27, 2016) (evaluating contacts such as plaintiff's solicitation of defendants for business relationship, nature of parties' negotiations, and extent of performance of contract in Vermont for purposes of specific jurisdiction).

Applying these principles, the Court does not have specific jurisdiction over Defendants Byrd, Vergara, or Hawkins. White's claims are based entirely on the alleged denial to him of kosher meals at the TCCF facility in Mississippi. The only allegations related to Hawkins arise from his alleged denial of the requested kosher meals at the facility. Further, while the Complaint contains no allegations related to Vergara or Byrd's acts or omissions, White appears to suggest that these Defendants also participated in the denial of his kosher meals. His allegations against all three Defendants center on conduct that occurred only at TCCF. White does not allege that suit-related conduct by Byrd, Vergara, or Hawkins was substantially connected to Vermont, as required for the Court to exercise specific jurisdiction over them. *See Walden*, 571 U.S. at 284. Further, Byrd, Vergara, and Hawkins attest that each has had no purposeful contact, let alone minimum contacts, with the state of Vermont arising out of or relating to White's suit. (*See* Doc. 39-1 at 1–2, ¶¶ 7–12; Doc. 39-2 at 2, ¶¶ 7–12; Doc. 39-3 at 1–2, ¶¶ 7–12.)

White claims that he "does not lose residency by virtue of his [i]ncarceration." (Doc. 40 at 1.) Therefore, he appears to contend that his status as a Vermont inmate incarcerated in Mississippi gives the Court personal jurisdiction over the CoreCivic Defendants in Vermont. (*Id*.) However, his status as a Vermont inmate within the Mississippi facility does not give this Court personal jurisdiction over the individual CoreCivic Defendants. *See Walden*, 571 U.S. at 284; *Wiley v. Baker*, Civil Action No. 2:20-cv-154-wks-jmc, 2021 WL 2652869, at *3 (D. Vt.

Jan. 28, 2021) ("[T]he fact that Wiley, as a Vermont DOC inmate being housed at TCCF, may have been a Vermont resident at the time of the alleged constitutional violations is insufficient to confer specific jurisdiction over [TCCF kitchen supervisor named as a defendant].").  Nor does CoreCivic's contract with the Vermont DOC confer specific jurisdiction over Byrd, Vergara, and Hawkins.  *See Dumont v. Corr. Corp. of Am.*, No. 2:14-cv-209, 2015 WL 3791407, at *5 (D. Vt. June 17, 2015) ("[J]ust because [Corrections Corporation of America] might be subject to personal jurisdiction in Vermont by contracting with the Vermont DOC does not mean that [Corrections Corporation of America]'s employees and managers are necessarily also subject to jurisdiction here.").

White has also failed to carry his burden to demonstrate that the Court can exercise specific jurisdiction over CoreCivic.  *See Metro. Life Ins. Co.*, 84 F.3d at 566.  Although it is undisputed that CoreCivic contracted with Vermont DOC to house and care for Vermont inmates outside of Vermont, the contract alone does not automatically establish minimum contacts in this forum.  *See Burger King*, 471 U.S. at 478; *Penn v. Corr. Corp. of Am.*, No. 1:05-CV-308, 2006 WL 2585089, at *1 (D. Vt. July 20, 2006) ("Evidence such as the value of the private prison contract or the manner in which [Corrections Corporation of America] solicited business from the State of Vermont would be helpful in determining the question of 'minimum contacts.' . . . Without sufficient evidence, however, this Court cannot find that personal jurisdiction . . . is proper.").  Because White has not shown that the individual CoreCivic Defendants and CoreCivic, Inc. have the requisite minimum contacts with Vermont, "the [personal jurisdiction] inquiry ends," and the Court need not evaluate the reasonableness prong of the due process analysis.  *See Metro. Life Ins. Co.*, 84 F.3d at 568.

Accordingly, I recommend that the Court decline to exercise personal jurisdiction over CoreCivic Defendants.

### C.    The District of Vermont is not a proper venue for White's claims.

Both Vermont Defendants and CoreCivic Defendants contend that White's Complaint should be dismissed for improper venue under Rule 12(b)(3).  (Doc. 3 at 8; Doc. 39 at 9.)  White responds that Vermont is a proper venue to hear his claims because "[u]nder [his] theory of the case, the acts of the TCCF employees all stemmed from the multiple acts and omissions of Defendant Baker and Defendant Turner."  (Doc. 21 at 9.)  White explains that "while the initial act of denying [him] a kosher diet was the result of the actions of an employee of TCCF in Mississippi, the overwhelming acts and omissions serving as the basis for [his] complaint occurred within [Vermont]."  (*Id.*)

"On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff."  *Indymac Mortg. Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).  When "a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), a court may consider evidence outside the four corners of the complaint, including affidavits and other documentary evidence."  *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012), *aff'd*, 740 F.3d 211 (2d Cir. 2014).  "The court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits."  *U.S. EPA ex rel. McKeown v. Port Auth. of N.Y. & N.J.,* 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001).  While plaintiffs "need not demonstrate that their choice of venue is the best forum," they still must "demonstrate a prima facie case that their choice is permissible under the statute." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 465 (D. Vt. 2013); *see also Corbishley v. Napolitano*, No. 20-CV-7445 (VSB), 2020 WL 6157103, at *2 n.2 (S.D.N.Y. Oct. 21, 2020) ("Judicial

deference to a plaintiff's choice of venue is . . . not warranted here, where I must determine the threshold question of whether venue is proper or improper under § 1391.").

Under 28 U.S.C. § 1391, a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Venue is plainly not proper under § 1391(b)(1) because not all Defendants reside in Vermont.  As explained below, venue is also not proper under § 1391(b)(2) and (3).

### 1.    Venue is not proper in the District of Vermont under 28 U.S.C. § 1391(b)(2).

In pertinent part, § 1391(b)(2) permits venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Although "venue can be appropriate in more than one district . . . [n]evertheless, the 'substantial events or omissions' requirement does limit the forums available to plaintiffs." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 431, 432 (2d Cir. 2005).

The Second Circuit has cautioned district courts to "take seriously the adjective 'substantial'" in § 1391(b)(2). *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). In particular, "[i]t would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Id.* "Substantiality" in the venue context is "determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33.

Courts apply a two-part test to determine whether venue is proper under § 1391(b)(2):

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question.

*Id*. at 432. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433.

In assessing venue, "courts have drawn a parallel between § 1983 claims based on constitutional violations and tort common law." *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1087 (N.D. Cal. 2018). In tort cases, the place where the plaintiff was harmed is relevant to the venue analysis. *Rothstein v. Carriere*, 41 F. Supp. 2d 381, 387 (E.D.N.Y. 1999); *see also Madison v. Dyal*, 746 F. Supp. 2d 450, 453 (W.D.N.Y. 2010) (holding that venue would be inappropriate in the Southern District of New York even if initial injury occurred there because "such fact is irrelevant to Plaintiff's claim . . . that while he was at [a prison facility in the Western District of New York], Defendants violated his constitutional rights, by refusing to provide him with medical treatment for his elbow injury"); 14D Wright & Miller, Fed. Prac. & Proc. § 3806 (4th ed.) ("In tort cases, courts tend to focus on where the allegedly tortious actions took place and where the harms were felt.").

The denial of White's requested kosher meals "give[s] rise" to the alleged violations of his constitutional and statutory rights. *See Daniel*, 428 F.3d at 431. The allegedly unconstitutional conduct occurred at TCCF in Mississippi. The TCCF employees' "acts or omissions" in Mississippi—and Defendants' alleged responsibility for those acts or omissions— are "material" to White's claims. If TCCF employees had not allegedly denied White's

requested diet, then he would have sustained no constitutional injuries. *See id.* Consequently, the "substantial part of the events or omissions giving rise to the claim" occurred in the Northern District of Mississippi. *See id.* By contrast, none of these events occurred in the District of Vermont. This is particularly true for the individual CoreCivic Defendants. Defendants Byrd, Vergara, and Hawkins have no ties to Vermont generally, and no specific ties to Vermont from which White's claims could conceivably arise. CoreCivic's only apparent connection to Vermont is the execution of the agreement with the Vermont DOC, a fact that is insufficient for venue to lie in this District, as discussed below.

White argues that venue is proper at least as to Defendants Baker and Turner because the theory of his case and "legal basis" of his claims "center[s] around the acts and omissions" that occurred in Vermont. (Doc. 21 at 8.) He specifically contends that venue is proper in the District of Vermont because Baker and Turner failed "to ensure when structuring the contract between CCA/TCCF and the VTDOC that TCCF was aware that it was a 'Vermont correctional facility.'" (Doc. 21 at 8, 9.) Even assuming, as White alleges, that Baker, Turner, and CoreCivic executed the agreement in Vermont, this act alone would not render Vermont a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2). While the circumstances of the agreement's negotiation and execution may be relevant to a personal jurisdiction minimum contacts test, it would be "error" to conflate the personal jurisdiction and venue inquiries. *See Gulf Ins. Co.*, 417 F.3d at 357. Even if the agreement obligated the Vermont DOC to ensure that White's constitutional rights were protected at the Mississippi prison, the location of the agreement's execution does not bear a sufficiently "close nexus" to White's underlying constitutional claims. *See Daniel*, 428 F.3d at 433.

24

White cites additional "acts and omissions" in Vermont that he asserts establish venue in this District:

> [t]he initial failure by the Defendants to ensure that TCCF employees and administrators[] were trained in the implementation of VTDOC religious practice policies and directives . . . [;]

> [t]he failure of Defendant Turner to take remedial steps to ensure that Plaintiff was not denied his right to a kosher diet after becoming aware of it through Plaintiff's grievances and appeals[;]

> [t]he failure of Defendant Turner and Defendant Baker to take corrective action to ensure that the denial of Plaintiff's right to a kosher diet did not continue once they became aware of it through the filing of Plaintiff's Complaint[; and]

> [t]he failure of Defendant Turner and Defendant Baker to ensure that Plaintiff was not subjected to invidious discrimination by denying him a religious diet that is freely given to other, similarly situated Vermont inmates housed in every other "Vermont correctional facility."

(Doc. 21 at 9.) Not only are these allegations conclusory, but the alleged acts and omissions further support venue in the Northern District of Mississippi. White ultimately claims that he was denied a diet complying with his religion while incarcerated in Mississippi. Defendants Baker and Turner's alleged failure to "train," "take remedial steps," "take corrective action," and "ensure that Plaintiff was not subject to invidious discrimination" are all omissions that could only be remedied in Mississippi. Thus, the conduct that "give[s] rise" to White's underlying § 1983 claim is in Mississippi, not Vermont. *See Daniel*, 428 F.3d at 433. While these alleged omissions may be "material" to White's claims, Baker and Turner's physical location when they allegedly occurred is not. *See id.* The Court must "take seriously the adjective 'substantial'" in § 1391(b)(2) when assessing the events or omissions giving rise to the claims. The events or omissions significant to White's claims simply did not take place in Vermont. *See Gulf Ins. Co.*, 417 F.3d at 357. Venue is therefore improper in this District under § 1391(b)(2).

25

**2.     Venue is improper under 28 U.S.C. § 1391(b)(3) because White could have filed his action in the Northern District of Mississippi.**

Under 28 U.S.C. § 1391(b)(3), venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," but only "if there is no district in which an action may otherwise be brought as provided in [§ 1391]." *See Daniel*, 428 F.3d at 434 ("[T]he phrase 'if there is no district in which the action may otherwise be brought' indicates that venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision.").

Given that White's principal allegations of misconduct center on the correctional facility in Mississippi, venue is most appropriate in Mississippi because the "substantial part of the events" occurred there. 28 U.S.C. § 1391(b)(2); *see Anderson v. Corr. Corp. of Am.*, No. 1:06-CV-144, 2007 WL 2745722, at *4 (D. Vt. Sept. 20, 2007) (transferring Vermont prisoner's action against Tennessee prison personnel to Tennessee). As this action may be brought in the Northern District of Mississippi, venue is improper under § 1391(b)(3) in the District of Vermont as to Defendants Baker, Turner, and CoreCivic Defendants.

**D.     White's case should be transferred to the Northern District of Mississippi under 28 U.S.C. § 1406.**

Vermont Defendants cite 28 U.S.C. §§ 1404 and 1406 to request transfer of White's claims to the Northern District of Mississippi. (Doc. 3 at 8.) CoreCivic Defendants join this request, asserting both that "the District of Vermont is an improper venue" and that "the Court should transfer venue . . . for the convenience of the parties, including Plaintiff who is incarcerated at TCCF in Mississippi, and the witnesses and in the interests of fairness and justice." (Doc. 39 at 9.)

When a case is commenced in an improper venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a); *cf. id.* § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). Several factors bear on whether a transfer is "in the interest of justice." First, the court may consider whether transfer would alleviate a procedural obstacle, such as allowing plaintiff to toll a statute of limitations that would otherwise bar him from refiling. *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978). Also relevant is whether transfer would "enable [plaintiff] to obtain personal jurisdiction over some or all of the defendants." *Id.* The court may further consider whether transfer would "severely prejudice" the defendant. *Id.* Finally, it may not be in the interest of justice to transfer if the merits of the case are "clearly doomed." *Daniel*, 428 F.3d at 436 (quoting *Philips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Courts "enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Id.* at 434; *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.").

First, transferring this case would likely cure the defect in personal jurisdiction over CoreCivic Defendants. *See SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("[W]hether or not venue [is] proper, lack of personal jurisdiction [can] be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or section 1404(a)."). White's claims do not appear to be barred on timeliness grounds because the relevant statutes of limitations have not yet run. *Cuvillier v. Taylor*, 503 F.3d 397, 401–02 (5th Cir. 2007) (noting Mississippi's three-year statute of limitations applicable to § 1983 claims); *Congregation Adas Yereim v. City of New York*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009) ("[T]he four-year catch-all federal statute of

limitations, codified at 28 U.S.C. § 1658(a), governs claims brought under RLUIPA."). Furthermore, given the efforts undertaken in this case to serve all parties, as well as the parties' litigative efforts to date, dismissal would cause a duplication of efforts by all involved. *See Williams v. Figueroa*, No. 1:07-CV-149, 2008 WL 2802840, at *4 (D. Vt. July 18, 2008) ("Williams commenced this action several months ago. Because of his *in forma pauperis* status, service has been initiated by the U.S. Marshals Service. To dismiss the case and require re-filing in Oklahoma would result in unnecessary duplication of effort on the part of the government, additional effort for the plaintiff, added expense for the defendants, and unnecessary delay for all parties.").

Second, it appears at this stage that all Defendants would likely be subject to personal jurisdiction in the Northern District of Mississippi. Specifically, CoreCivic, Inc. operates TCCF, and the individual CoreCivic Defendants worked at TCCF at times relevant to the allegations in the Complaint. Further, there is at least a colorable claim to personal jurisdiction over the Vermont Defendants in the Northern District of Mississippi. The Mississippi long-arm statute authorizes personal jurisdiction over three categories of out-of-state defendants:

> Any nonresident . . . who shall [1] make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall [2] commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall [3] do any business or perform any character of work or service in this state . . . .

Miss. Code Ann. § 13-3-57. The Fifth Circuit appears to broadly interpret "any character of work" under the long-arm statute. *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498, 599 (5th Cir. 2012) (holding that shipments to Mississippi under multi-state contract constituted sufficient "character of work" under Mississippi long-arm statute). Because Mississippi's long-arm statute "is not coextensive with federal due process," *Allred v. Moore & Peterson*, 117 F.3d

278, 282 (5th Cir. 1997), Defendants' contacts are also subject to a separate minimum contacts analysis. *ITL Int'l*, 669 F.3d at 498–500 (holding that defendants' designation of Mississippi port as one of several in shipping contract "was enough that they should have reasonably anticipated being haled into court in Mississippi"). At this stage, Defendants do not appear to clearly lack minimum contacts with Mississippi. *See id.* at 499 (noting "specific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts").

Nevertheless, "[i]t is a serious matter to undertake a determination of the jurisdiction of a sister district," *Int'l Flavors & Fragrances Inc. v. Van Eeghen Int'l B.V.*, No. 06 CIV. 490(JFK), 2006 WL 1876671, at *8 (S.D.N.Y. July 6, 2006), particularly when the transferee court will apply the law of its own Circuit to the jurisdictional question. *Cf. Penn v. Corr. Corp. of Am.*, No. 1:05-CV-308, 2006 WL 2585089, at *8 (D. Vt. July 20, 2006) (citing Sixth Circuit case law in deciding that "the Court need not determine at this time whether such facts would save Penn's case from dismissal for lack of exhaustion," but noting that "[i]f this case is transferred to Kentucky, these claims would likely receive equally careful consideration"). In this case, the Court similarly need not determine the likelihood of personal jurisdiction over Defendants in the Northern District of Mississippi. However, given Defendants' apparent contacts with the Northern District of Mississippi—either as the operator of TCCF, an employee of TCCF, or a Vermont DOC official with inmates housed at TCCF—the Court can reasonably conclude for purposes of transfer that Defendants are subject to personal jurisdiction in that forum.

Third, transfer would not seriously prejudice Defendants. Although all Defendants have requested dismissal of the Complaint, they have alternatively requested transfer to the Northern District of Mississippi (including Vermont Defendants, who arguably would be most

significantly prejudiced by a transfer to Mississippi).  (*See* Doc. 3 at 8.)  Accordingly, this factor does not weigh against transferring the action to the Northern District of Mississippi.

The fourth factor directs the Court to consider whether the merits of the case are "clearly doomed." *Daniel*, 428 F.3d at 436.  In making this determination, the Court "take[s] a peek at the merits" to determine whether the case is not a "waste [of] judicial resources." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *accord Griffin v. Mills*, No. 106-CV-179, 2007 WL 1815496, at *6 (D. Vt. June 21, 2007).  White's Complaint alleges that CoreCivic employees have deprived him of a kosher diet in violation of his constitutional rights and statutory rights under RLUIPA.  Although Defendants assert several grounds for dismissal, White's case is not so lacking in merit at this stage as to "doom" the case post-transfer.  *See Bowles v. U.S. Postal Serv.*, Case No. 5:13-cv-80, 2014 WL 12729330, at *3 (D. Vt. Jan. 3, 2014) ("The Complaint presents no obvious flaws that would render it 'clearly doomed' upon its arrival in the correct court."); *Lama v. New Century Found.*, No. 19cv02169 (GHW) (DF), 2019 WL 7599899, at *10 (S.D.N.Y. Oct. 10, 2019) ("[A]lthough Plaintiffs' claims may not ultimately prove successful, and although certain of their allegations . . . may be legally insufficient, a 'peek at the merits' . . . does not demonstrate that this case, as a whole, is a 'sure loser,' such that transferring it to another district would amount to 'wast[ing] the time of another court.'").  As the court in the Northern District of Mississippi will apply Fifth Circuit law in its review of White's claims upon transfer, this Court should not undertake such an analysis now.  *See Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) ("If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, . . . it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option."); *Griffin*, 2007 WL 1815496, at *6 ("Whether a court in the Sixth Circuit, after applying that Circuit's law, will find

that Griffin's claim cannot proceed as a matter of law is best left to the able courts of that Circuit.").

Accordingly, transferring White's case to the proper forum—rather than dismissing his claims for him to refile—is in the interest of justice.  28 U.S.C. § 1406(a).[13]  Because I recommend transferring the remaining claims in White's Complaint to the Northern District of Mississippi, this Report and Recommendation does not address Defendants' arguments for dismissal under Rule 12(b)(6).  *See Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017) (declining to rule on pending Rule 12(b)(2) and Rule 12(b)(6) motions after granting motion to transfer venue).

## II.    White's Motion for Injunctive Relief.

In addition to his request for injunctive relief in the Complaint, White has separately filed a Motion for Injunctive Relief that seeks the same remedy, i.e., the provision of a kosher diet. (Doc. 8.)  In Part I.A.2 above, I recommended that White lacks standing to pursue an official-capacity claim for injunctive relief under § 1983 against Defendants Deml and Turner.  The Motion for Injunctive Relief, however, appears to seek to enjoin both Vermont and CoreCivic Defendants from denying his request for a kosher diet.  Because I recommend transferring White's remaining claims to the Northern District of Mississippi, I do not recommend a disposition on the merits of White's Motion for Injunctive Relief.  *See Kinlaw v. Pataki*, No. 07-CV-574Sr., 2007 WL 4166029, at *2 (W.D.N.Y. Nov. 16, 2007) (ordering that *pro se* prisoner's

---

[13]  As I recommend transfer under § 1406(a), this Report and Recommendation has not analyzed transfer under § 1404.  *Nelson v. Wells Fargo Bank, N.A.*, No. 17-cv-4045 (LAP), 2019 WL 2514229, at *11 (S.D.N.Y. June 18, 2019) ("Because the Court [should] grant[] mandatory transfer under [§] 1406(a), it need not consider the parties' arguments for discretionary transfer under 28 U.S.C. § 1404.").

"motions for injunctive relief and for the appointment of counsel will be left to the transferee court to address" upon transferring action pursuant to § 1406).[14]

## Conclusion

For the reasons stated above, I recommend granting in part and denying in part the Vermont Defendants' Motion to Dismiss, or in the alternative, Motion for Venue Transfer to the Northern District of Mississippi (Doc. 3), and granting in part and denying in part CoreCivic Defendants' Motion to Dismiss (Doc. 39). I recommend transferring White's Complaint and Motion for Injunctive Relief (Doc. 8) to the Northern District of Mississippi.

Dated at Burlington, in the District of Vermont, this 24th day of February 2022.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).

---

[14] This Report and Recommendation does not consider Vermont Defendants' claim that White's request for injunctive relief is moot because he is currently receiving a kosher diet at TCCF. (Doc. 20 at 1.) White has submitted an affidavit that directly contests the assertion that he is receiving a kosher diet. (*Compare* Doc. 20-1 at 3, ¶ 12 ("Plaintiff is currently receiving a kosher diet. He will continue to receive the diet unless he requests that it be changed . . . or he is deemed non-compliant with the diet pursuant to the Religious Diet Agreement he signed.") *with* Doc. 23-1 at 2, ¶ 15 ("To date, I have never received a 'kosher' diet, much less the same type of kosher diet served to other, similarly situated Vermont 'inmates' housed in-state at Vermont 'correctional facilities.'").). The Court may not resolve a motion for injunctive relief when presented with conflicting fact affidavits. *See In re Crim. Contempt Proc. Against Crawford*, 133 F. Supp. 2d 249, 261 (W.D.N.Y. 2001) ("Because the Second Circuit has repeatedly held that motions for preliminary injunction should not be resolved on the basis of affidavits that evince disputed issues of fact, the issuance of a preliminary injunction based solely on the conflicting fact affidavits is not a viable option for the district court."); *see also Forts v. Ward*, 566 F.2d 849, 851–52 (2d Cir. 1977) ("Generally, of course, a judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for 'one piece of paper to another.'").